UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20543-CIV-SEITZ/O'SULLIVAN

MICHAEL D. WRIGHT,

        Movant,

vs.

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING CERTIFICATION OF APPEALABILITY

THIS MATTER is before the Court upon the Report and Recommendation ("R&R") [DE-18] of the Honorable Patrick A. White, United States Magistrate Judge. Magistrate Judge White recommends denying Movant Michael Wright's ("Wright's") 28 U.S.C. §2255 Motion to Vacate his convictions and sentences for (1) conspiracy to commit wire fraud, and (2) embezzling goods valued in excess of $1,000 from a vessel operated by a common carrier. Having reviewed *de novo* the § 2255 Motion, R&R, Wright's objections thereto, the record, and pertinent legal authorities, the Court finds that Judge White's factual determinations are not clearly erroneous and he correctly applied the law to those facts. The Court will overrule the objections and affirm Judge White's recommendation, dismiss the Petition, and deny certification of appealability.

## I.      BACKGROUND FACTS[1]

Wright's § 2255 Motion and its underlying convictions arise from the fraudulent purchase of over $30,000 in goods while Wright, his son Bryan Wright ("Bryan") and Bryan's girlfriend Beth Nagle ("Beth") (collectively, "Defendants") were passengers on board the Celebrity Cruise Lines ("CCL")

---

[1] Citations in this Section are to the docket in Wright's criminal case, Case No. 07-cr-20010-PAS.

cruise ship *Century*. The *Century* was to depart from Miami on December 2, 2006, with stops at Montego Bay, Jamaica, and Georgetown, Grand Cayman Island, before returning to Miami, on December 7, 2006. (DE-117 at 133). Wright, Bryan and Beth boarded the *Century* in Miami on December 2, 2006. (GX 4 and GX 5 (*Century* billing details showing charges commencing December 2, 2006). When they checked in, all three presented Beth's Bank of America ("BOA") Visa debit card ending in 6135 ("Card No. 6135") to cover their charges while on board. Card No. 6135 was linked to a BOA joint checking account that Beth shared with Bryan ("Bank Account"). (DE-117 at 165-69; GX 12 (stipulation to documents at ¶ 8). At the time Wright, Bryan and Beth boarded the *Century*, the Bank Account had only $473.37.[2]

When the Defendants checked in, all three presented Card No. 6135 to cover their charges while on board. Wright and Beth signed written agreements called "charge account forms" where they represented that Card No. 6135 was a credit card and authorized CCL to charge Card No. 6135 anything they purchased on the *Century*. (DE-117 at 39-44; GX 2 and GX 3). *Century* personnel issued to each of the Defendants a cabin card called a "Sea Pass" that served as both a state-room key and a credit card for purchases on board the ship. (DE-117 at 39-40).

On the evening of December 2, 2006, Wright and Bryan went to Starboard Holdings's ("Starboard's") jewelry and watch store located on deck 6 of the *Century*. The store's manager, Jacques Van der Loo ("Van der Loo") showed Wright some men's rings, and Bryan bought one of them for Wright. (DE-117 at 97-106, 116-17, 127). Beth then entered the shop and Van Der Loo heard the trio

---

[2] The trio's reservations on the *Century* were purchased on or about November 28, 2006 with Beth's Bank of America Visa card ending in 8193 ("Card No. 8193"). (DE-117:165; GX 1 (cruise booking document). Card No. 8193 was also linked to the Bank Account. (DE-117:165-69; GX 1; GX 8A). After deducting the cost of the reservation ($1,117.44) only $473.37 remained in the Bank Account. (DE-117:167-69; GX 8A).

discuss how they had $60,000 to spend on the cruise, and calculate aloud how much money they would have left if they purchased items that Van Der Loo was showing to them. (*Id.* at 104-105).

Between December 2, 2006 and December 4, 2006, the Defendants used their Sea Pass card to obtain $30,505.90 in goods and services from CCL and Starboard. (GX 4 and GX 5 (billing details for the three Defendants). The purchased merchandise included $637.98 in watches, a $6,000 diamond bracelet, a $900 ring, a $10,125 diamond necklace, and a $584 pearl necklace or ring. (DE-117 at 86-87, 106-09; GX 6 (Starboard invoices).

On December 4, 2006, while the *Century* was docked at Montego Bar, Jamaica, the Defendants left the ship with their luggage. Wright denied they were disembarking, and told the ship's documentation officer that they were going to leave luggage with friends and family, then return to the ship. (*Id.* at 129-138). However, the Defendants never returned, and the *Century* left Montego Bay without them. (*Id.* at 141-42).

CCL attempted to settle Bryan's and Beth's Sea Pass accounts using Card No. 6135, but the charge was rejected due to insufficient funds. (*Id.* at 171-73; GX 8C (Bank of American confirmation that charge was declined due to insufficient funds)). On December 4, 2006, CCL contacted the F.B.I. to report the theft of $30,000 in goods and services that the Defendants charged to their Sea Pass card before absconding from the *Century*. (DE-117 at 161-63). Authorities apprehended the Defendants at Miami International Airport on December 13, 2006. (*Id.* at 176-77).

On April 27, 2007, a jury found Wright guilty of one count of conspiracy to commit wire fraud by knowingly devising a scheme to defraud Royal Caribbean Cruise Lines, Starboard and BOA, to obtain property and monies of those entities by means of fraud, using wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1349; and one count of theft by fraud of goods

3

valued in excess of $1,000 from a vessel operated by a common carrier moving in interstate and foreign commerce, in violation of 18 U.S.C. § 659.  Wright did not testify or call witnesses at trial.

## II.   MERITS

Wright moves to vacate his conviction on four grounds, all of which Judge White recommends dismissing.  First, Wright claims that this Court lacked jurisdiction to impose a conviction because the statute giving United States district courts original and exclusive jurisdiction of all offenses against federal law, 18 U.S.C. §3231, did not pass both houses of Congress.  Second, Wright claims that his Sixth Amendment and Fourteenth Amendment rights were violated when the Government withheld a video recording from a security camera in Van Der Loo's gift shop.  Third, Wright claims this Court failed to be impartial during his trial by asking one of the government's witnesses to draw a diagram of the gift shop and by asking potential jurors whether the experience of witnessing or being a victim of a crime had left them with a "bad taste in their mouth."  Finally, Wright raises seven ineffective assistance of counsel claims.

### 1.   Jurisdictional Claim

Wright claims that this Court lacked jurisdiction because the statute giving the Court jurisdiction of all offenses against federal law did not pass both houses of Congress.  Judge White concludes, in line with numerous other courts, that this claim should be dismissed because the 1948 amendment to § 3231 was properly enacted when it passed both houses of Congress and was signed by President Truman. The two cases Wright cites in objection do not even discuss the enactment of § 3231, and the reasoning of the overwhelming authority rejecting Wright's argument is sound.  *See Chao v. USA Mining, Inc.* 2007 WL 208530, at *16 (E.D. Tenn. Jan. 24, 2007) ("Every court that has considered this argument [concerning the enactment of § 3231] has ruled against the defendant."); *see also United States v.*

4

*Siegelman*, 2007 WL 1284276, at *1 (M.D. Ala. Apr. 30, 2007) ("even the briefest of forays into the electronic databases available for legal research yields a long list of judicial opinions that have considered and rejected" this argument). As a result, the Court will affirm Judge White's recommendation that Wright's jurisdiction claim should be dismissed.

### 2.    Withholding Of Security Camera Footage

Wright claims that his Sixth Amendment and Fourteenth Amendment rights were violated when the Government allegedly withheld video footage from a security camera that Wright claims would have proven that he was not present in the gift shop during the fraudulent transaction Van Der Loo claims to have witnessed.[3] However, Wright concedes that he did not raise this claim on appeal and has not objected to Judge White's conclusion that this claim should be dismissed as procedurally barred because it could have been raised on Wright's direct appeal. The Court will affirm Judge White's recommendation that Wright's claim concerning the security camera evidence should be dismissed as that recommendation is factually reasonable and in accordance with applicable federal principles.[4]

### 3.    Unfair Trial

Wright next claims this Court failed to be impartial during his trial, thereby violating his constitutional rights, in two ways. First, he argues the Court violated his rights by "leaving the bench" when it directed one of the government's witnesses, during the government's examination, to draw a diagram showing where Wright was located in a jewelry store. Second, he claims that during voir dire the Court repeatedly asked prospective jury members whether anyone had done anything to them that

---

[3] The record's first indication of the existence of a video is the testimony Van Der Loo on cross-examination by Wright's counsel. Thereafter, his counsel made no request that the Government produce the video either at trial, nor did counsel raise the issue on direct appeal.

[4] To the extent Wright claims his counsel was ineffective for allowing the government to withhold this footage, that claim will be addressed in Section I.4 below.

left a bad taste in their mouth, allegedly implying that Wright was the bad taste in Starboard's and BOA's mouth and, therefore, was guilty.

As to the diagram claim, the R&R reflects that the Court only asked the witness to diagram the layout of the floor so as to depict the location of watches in the store relative to where the jewelry was purchased, not where Wright was located in the store. It also reflects that the Court withdrew its request upon objection from Wright's counsel. Based on these factual findings, Judge White concludes that all of the Court's actions were proper and do not reflect bias, such that Wright's claims are unmerited.

Wright does not dispute Judge White's factual findings, but objects that cases not addressed in the R&R support his claim that the Court denied him a fair trial. However, each of these cases involve fact patterns significantly different than the facts in this case where the trial court essentially took over the duty of examining witnesses, and do not remotely demonstrate that the Court acted in a manner so that Wright was deprived of a right to a fair trial. *See United States v. Hoker*, 483 F.2d 357, 368 (5th Cir. 1973) (trial judge's one-hundred-and-fifty three questions asked of the defendant in front of the jury tended to show he questioned the defendant's credibility); *United States v. Lanham*, 416 F.2d 1140, 1144 (5th Cir. 1969) (trial judge asked overwhelming number of questions to the two defense witnesses); *Adler v. United States*, 182 F. 464 (5th Cir. 1919) (trial judge cross-examined defense witnesses "at length").

As for the claim that the Court biased the jury by asking prospective jurors if they had ever done anything to leave a bad taste in their mouths, the record shows that the Court's comments could have had no such effect. The Court's comments were made during questioning of panel members who came forth to say they had been the victim of or witness to a crime. (DE-116 at 101-110).[5] First, the Court

---

[5] Record citations in this paragraph are to the record in the criminal case.

asked one panel member whether the fact that law enforcement did not inform him whether they had prosecuted the person who stole his credit card number, and conducted no investigation into the theft, had left "a bad taste" in his mouth. (*Id.* at 105). The prospective juror said the experience had left a bad taste in his mouth, but that it would not effect his ability to sit as a juror. (*Id.*). Then, the Court asked another panel member who was a victim of two home robberies whether law enforcement's lack of effort to apprehend the perpetrator "and the bad taste it left in [her] mouth" would make it difficult for her to treat both sides on the same level playing field. (*Id.* at 108). The prospective juror said she would not hold the experience against the Government or the defendant. (*Id.*). While both witnesses expressed that negative feelings lingered from past events, their statements tend to suggest that their negative feelings were directed at law enforcement for not adequately investigating the crimes, not criminal defendants. Moreover, both prospective jurors stated that they could sit on the panel without holding the experience against the defendant or the government, and their statements are presumed to be truthful.[6] *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("jurors are presumed to follow the court's instructions" and a court should assume jurors can put aside any bias to follow those instructions). As a result, the Court will affirm Judge White's recommendation that Wright's claim that he was deprived of a fair trial by an impartial judge should be dismissed.[7]

### 4.     Ineffective Assistance

Finally, Wright claims that his previous counsel provided ineffective assistance by failing to take the following actions: (1) object to the government witness' allegedly perjured testimony placing Wright

---

[6] A third prospective juror, Kathy Garcia-Mojica, said that the experience of having her card number stolen and not receiving subsequent notification by the bank "left a bad taste" because she had to find out herself that her card was taken. (*Id.* at 106-107). While Ms. Garcia-Mojica said that she did not believe she could treat both sides equally, she was ultimately not selected for the jury. (*Id.* at 184).

[7] To the extent Wright claims his counsel was ineffective for failing to object to the Court's request that the government witness draw a diagram of the jewelry store, that claim will be addressed in Section I.4 below.

in the jewelry store onboard the cruise ship; (2) properly defend against the perjured testimony by procuring the ship's security camera footage showing Wright was by the ship's pool bar when the purchase in question was made; (3) move for a mistrial; (4) orally object when the Court asked the government's witness to draw a diagram of the jewelry store; (5) conduct any investigation aboard the ship; (6) call any witnesses to rebut the government's case; (7) take an appeal raising any of the foregoing issues. Judge White concludes that each claim should be rejected.

In order to successfully assert a claim for ineffective assistance of counsel, a criminal defendants must show both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendants. *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000); *Strickland v. Washington*, 466 U.S. 668, 690 (1986). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Florida Dep't of Corrections*, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). Under the second prong of the *Strickland* test, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonably probability is probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

First, Wright's claims that his counsel was ineffective for failing to object to the testimony of government witnesses placing Wright in the gift shop or failing to move for the production of security camera footage are not supported by any specific facts or affidavits that show the witnesses in question committed perjury or the security footage would have bolstered Wright's defense. *See Tejada v.*

8

*Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (movant is not entitled to relief when ineffective assistance claim is conclusory and unsupported by specific proof). Van Der Loo testified that the video footage he observed shows that Wright walked through shop with Bryan Wright at the time one of the fraudulent purchases was made, though the camera angle was such that it did not show Wright standing next to Bryan Wright inside the shop. (DE-117 at 113-14). Nothing in Van Der Loo's testimony about the footage suggests he or other witness committed perjury by placing Wright inside the gift shop, and Wright's counsel cannot be second-guessed for failing to request the production of video footage that may have been detrimental to his client's defense. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."). As a result, Judge White's recommendation that Wright's two claims regarding witness perjury and the production of video footage will be affirmed and adopted.[8]

Second, Wright does not specifically object to Judge White's recommendation on his remaining claims, and those claims can be addressed summarily. Wright's claim that his counsel was ineffective for failing call rebuttal witnesses is conclusory, and Wright does not identify what witnesses should have been called or describe how their testimony would have helped his case. Generally, tactical or strategic choices by counsel cannot support a claim of ineffective assistance. *See United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982). Wright's claim that his counsel was ineffective for failing

---

[8] Wright argues that he has been denied due process in these proceedings because he has been denied a copy of his trial record and discovery. However, Wright has not asked for the trial record during these proceedings, but has asked instead for video footage of his trial that does not exist, and video footage from the *Century* gift shop and pool bar that was never put into evidence. (*See* DE-8, DE-14).

Moreover, Wright has not produced any proof to establish that requested footage from the pool bar taken on December 12, 2006 between 20:25 and 20:34 would establish his innocence. The Defendants were not on *Century* on December 12, 2006. Additionally, the receipts he attached to his initial motion for discovery show that charges were made in the *Century's* gift shop on December 2, 2006 at 19:38, 19:53 and 20:07. (DE-8 at page 5). Video footage of the pool bar taken between 20:25 and 20:34 would have no bearing on whether Wright was in the gift shop at the time the fraudulent purchases were made.

to investigate aboard the ship is also unsupported by any specific facts to establish that his defense would have benefitted at all, let alone to a degree that there is a reasonable probability the outcome of his case would have been different had his counsel conducted such an investigation. Judge White's recommendation that these two claims be dismissed will also be affirmed and adopted.

Finally, given the Court's resolution of the claims discussed above, the disposition of the remaining claims is self-evident. Because Wright's counsel did orally object to the Court's request that a government witness draw a diagram of the gift shop, Wright's claim that his counsel should have objected to the Court's request should obviously be dismissed. As none of the ineffective claims discussed above have merit, Wright's counsel could not have been ineffective either for failing to move for a mistrial or for failing to raise these claims on appeal. Accordingly, Judge White's recommendation as to these remaining three ineffective assistance claims will also be affirmed.[9]

## III.   CERTIFICATION OF APPEALABILITY

Moreover, the Court will deny issuance of a certificate of appealability for this Motion. Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court, having established grounds for entering a "final order adverse to the applicant" on this Petition, "must issue or deny a certificate of appealability." In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Jones v. Secretary*, 607 F.3d 1346, 1349 (11ᵗʰ Cir. 2010)

---

[9] The Court also adopts the Magistrate Judge's recommendation that an evidentiary hearing is not needed to resolve this Motion. A hearing is not required on claims that are based on unsupported generalizations or affirmatively contradicted by the record. *See Holmes v. Untied States*, 876 F.2d 1545, 1553 (11ᵗʰ Cir. 1989).

(quotation omitted). Here, Wright has not made a substantial showing of the denial of a constitutional right with respect to any of his claims. As a result, it is hereby

ORDERED THAT

(1) The Report and Recommendation of Magistrate Judge Patrick White [DE-18] is AFFIRMED and Wright's objections to the Report and Recommendation are overruled;

(2) Petitioner's Motion to Vacate under 28 U.S.C. §2255 [DE-1] is DENIED; and

(3) All pending motions not otherwise ruled upon are DENIED AS MOOT and this case is CLOSED.

DONE and ORDERED in Miami, Florida, this 25th day of January, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record/*Pro Se* Parties

11